## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI-DADE DIVISION

In re:

**RAUL MILIAN**

Case Number 18-17860-RAM
Chapter 13

Debtor(s)

_____/

### DEBTOR'S MOTION TO SELL HOMESTEAD PROPERTY

Debtor, **RAUL MILIAN,** by and through undersigned counsel, files this *Motion to Sell*

*Homestead Property,* and avers:

1.      The Debtor filed this Chapter 13 case on June 29, 2018.

2.      This is a confirmed case.

4.      The Debtor seeks to sell her homestead property located at 430 SW 78 Avenue,

Miami, FL  33144, which is legally described as follows:

**Lot 15 less North 10 feet and all of Lot 14, Block 25, Flagami Third
Addition, according to the Plat thereof, as recorded in Plat Book 17, at
Page 59, of the Public Records of Miami-Dade County, Florida.**

**Folio No. 30-4003-001-3510**

5.      A copy of the contract is attached hereto as Exhibit "A" and incorporated

herein by reference.

6.      A copy of the proposed closing statement is attached hereto as Exhibit "B"

and incorporated herein by reference.

6.      The Debtor will pay off all liens at closing.  All proceeds remaining shall be

property of the Debtor as the property was claimed exempt and no objections were filed.

7.      The Debtor has requested and believes that the service of filing this motion is

necessary for the administration of his case. The attorney for the Debtor has received a fee of

$500.00 for the filing and prosecuting of this motion and representing the Debtor in the Chapter

13 case and $25.00 for costs and seeks court approval of the fee pursuant to 11U.S.C. §329 and

Rule 2016 of the Federal Rules of Bankruptcy Procedure. The services required in filing and prosecuting the motion and representing the Debtor in the Chapter 13 case are reasonable and necessary and are not contemplated by the original retainer agreement between the Debtor and the attorney for the Debtor.

**WHEREFORE,** the Debtor, **RAUL MILIAN,** seeks the relief sought in this motion and for any other relief deemed just and proper in the circumstances.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent, via Regular U.S. Mail, this 2nd day of March 2021 to all parties on the attached service list and via CM/ECF to Office of the US Trustee and Nancy K. Neidich, Chapter 13 Trustee.

**KINGCADE & GARCIA, P.A**
Counsel for the Debtor
Kingcade Building
1370 Coral Way • Miami, Florida 33145-2960
WWW.MIAMIBANKRUPTCY.COM
Telephone: 305-285-9100 • Facsimile: 305-285-9542

**CERTIFICATE PURSUANT TO LOCAL RULE 9011-4(B)**

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

/s/ Timothy S. Kingcade
x  Timothy S. Kingcade, Esq., FBN 082309
☐  Wendy Garcia, Esq., FBN 0865478
☐  Jessica L. McMaken, Esq., FBN 580163



## Addendum to Contract

Addendum No. ___1___ to the Contract with the Effective Date of _____01/29/2021_____ between

_____RAUL MILIAN AND VICTOR DE JESUS EST OF_____ (Seller)

and _____FERNANDO PATTERSON AND MARCELO PATTERSON_____ (Buyer)

concerning the property described as: __430 SW 78th Ave, Miami, FL 33144-2320__

In the event that the appraisal value is below the purchase price, Buyer agrees to pay $2000.00 above said appraised value, provided that the purchase price shall not exceed the original purchase price of $375,000

All other terms relating to the appraisal procedure and Buyer's and Seller's obligations shall be considered according to the Comprehensive Rider to the Residential Contract for Sale and Purchase / F. Appraisal contingency.

| *RM* | *FP* | *MP* |
|---|---|---|
| 01/29/21 4:43 PM EST dotloop verified | **1/30/2021** | **1/30/2021** |

Buyer: *Fernando Patterson*                          Date: 1/27/2021

Buyer: *Marcelo Patterson*                           Date: 1/27/2021

Seller: *Raul Milian*      dotloop verified
                           01/29/21 4:43 PM EST
                           PSOO-6RL6-AWHE-TYME     Date: _____

Seller: _____                      Date: _____

ACSP-4   Rev 6/17                                    ©2017 Florida Realtors®

Serial#: 010291-400161-1794850

Electronically Signed using eSignOnline™ [ Session ID  b53b4552-81bc-4164-8482-8a16d40e99fd ]

Form Simplicity

*Exhibit "A"*

## "AS IS" Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**

1\* **PARTIES:** _____RAUL MILIAN AND VICTOR DE JESUS EST OF_____ ("Seller"),
2\* and _____FERNANDO PATTERSON AND MARCELO PATTERSON_____ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this AS IS Residential Contract For Sale And Purchase
5  and any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7\*   (a) Street address, city, zip: _____430 SW 78th Ave, Miami, FL 33144-2320_____
8\*   (b) Located in: _____Miami-Dade_____ County, Florida. Property Tax ID #: _____30-40-03-001-3510_____
9\*   (c) Real Property: The legal description is 3 54 40 FLAGAMI 3RD ADDN PB 17-59 LOT 15 LESS N10FT & ALL
10     LOT 14 BLK 25 LOT SIZE 90.000 X 119 COC 23096-4408 01 2005 4
11
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14     by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18     drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19     and other access devices, and storm shutters/panels ("Personal Property").
20\*    Other Personal Property items included in this purchase are: As per MLS description
21
22     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23\*   (e) The following items are excluded from the purchase: Refrigerator, range, microwave, ceiling fans,
24     Washer and Dryer

*[handwritten initials: RM, FP, MP with dotloop verification 01/29/21 4:42 PM EST]*

25                        **PURCHASE PRICE AND CLOSING**
26\* **2. PURCHASE PRICE** (U.S. currency):.............................................................................$ __375,000.00__
*[dotloop verified 1/30/2021 1/30/2021]*

27\*   (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $ __5,000.00__
28     The initial deposit made payable and delivered to "Escrow Agent" named below
29\*    **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☒ is to be made within _____ (if left
30     blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31     OPTION (ii) SHALL BE DEEMED SELECTED.
32\*    Escrow Agent Information: Name: _____Sharp Title Solutions of Florida_____
33\*    Address: _____10691 N Kendall Dr #309, Miami, FL 33176_____
34\*    Phone: _(305) 596-0301_ E-mail: _info@sharptitlesolutions.net_ Fax: _____
35\*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36\*    days after Effective Date ...........................................................................................$ __3,000.00__
37     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38\*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ......... __95%__

39\*   (d) Other: _____ .............. $ _____
40   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
41\*    transfer or other COLLECTED funds ...........................................................................$ __10,750.00__
42     **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.**
43  **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45\*    _January 28, 2021_, this offer shall be deemed withdrawn and the Deposit, if any, shall be returned to
46     Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47     the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this offer or final counter-offer ("Effective Date").
50  **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52\*    ("Closing") on _~~or before 40 days~~_ ("Closing Date"), at the time established by the Closing Agent.
       _On or After March 15, 2021_

*[handwritten initials: FP, MP, FP, MP and RM with dotloop verification]*

Buyer's Initials **FP** **MP** _FP_ _MP_       Page 1 of 12 _dotloop verified_       Seller's Initials _RM_ 01/29/21 4:42 PM EST _dotloop verified_

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 003300-700161-1794641

🔳 Form
🔳 Simplicity

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING.** If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☑ may not assign this Contract.                    *FP*        *MP*        ☑ *RM*
01/29/21
4:42 PM EST
dotloop verified

**FINANCING**

**8. FINANCING:**

☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☒ (b) This Contract is contingent upon Buyer obtaining approval of a ☒ conventional ☐ FHA ☐ VA or ☐ other _____ (describe) loan within _____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☒ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed _____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of __30__ (if left blank, then 30) years ("Financing").

  (i) Buyer shall make mortgage loan application for the Financing within _____ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

  (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

  (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

  (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been unable to obtain Loan Approval and has elected to either:

    (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or

    (2) terminate this Contract.

Buyer's Initials **FP**   **MP**                    Page **2** of **12**                    Seller's Initials   *RM*
01/29/21
4:42 PM EST
dotloop verified

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 003300-700161-1794641

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a16d40e99fa ]

109     (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
110 expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
111 will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
112 by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.

113     (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
114 default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
115 from all further obligations under this Contract.

116     (vii) If Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
117 fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
118 default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
119 have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
120 of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
121 Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
122 Contract.

123* ☐(c) Assumption of existing mortgage (see rider for terms).
124* ☐(d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

125 **CLOSING COSTS, FEES AND CHARGES**

126 **9. CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
127 (a) **COSTS TO BE PAID BY SELLER:**
128 • Documentary stamp taxes and surtax on deed, if any    • HOA/Condominium Association estoppel fees
129 • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)    • Recording and other fees needed to cure title
130 • Title search charges (if Paragraph 9(c)(iii) is checked)    • Seller's attorneys' fees
131* • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)    • Other:_____
132     If, prior to Closing, Seller is unable to meet the AS IS Maintenance Requirement as required by Paragraph 11
133 a sum equal to 125% of estimated costs to meet the AS IS Maintenance Requirement shall be escrowed at
134 Closing. If actual costs to meet the AS IS Maintenance Requirement exceed escrowed amount, Seller shall pay
135 such actual costs. Any unused portion of escrowed amount(s) shall be returned to Seller.
136 (b) **COSTS TO BE PAID BY BUYER:**
137 • Taxes and recording fees on notes and mortgages    • Loan expenses
138 • Recording fees for deed and financing statements    • Appraisal fees
139 • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)    • Buyer's Inspections
140 • Survey (and elevation certification, if required)    • Buyer's attorneys' fees
141 • Lender's title policy and endorsements    • All property related insurance
142 • HOA/Condominium Association application/transfer fees    • Owner's Policy Premium (if Paragraph
143 • Municipal lien search (if Paragraph 9(c)(ii) is checked)      9 (c)(iii) is checked.)
144* • Other: _450.00 transaction fee to Royal Realtors Group_
145* (c) **TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked,
146 then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
147 licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
148 Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be
149 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
150 copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
151 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
152 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
153 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
154 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
155 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
156 liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
157 **(CHECK ONE):**
158* ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
159 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
160 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
161 provider(s) as Buyer may select; or
162* ☐ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
163 services related to Buyer's lender's policy, endorsements and loan closing; or

164* [X] (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller shall furnish a copy of a prior owner's policy
165 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
166 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
167 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
168* policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
169 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.

170 (d) **SURVEY:** On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
171 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
172 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

173* (e) **HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller [X] N/A shall pay for a home warranty plan issued by
174* _____ at a cost not to exceed $_____. A home
175 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
176 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

177 (f) **SPECIAL ASSESSMENTS:** At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
178 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
179 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
180 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
181 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
182 be paid in installments **(CHECK ONE):**
183* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
184 Installments prepaid or due for the year of Closing shall be prorated.
185* ☐ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
186 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
187 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
188 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

189 ## DISCLOSURES

190 **10. DISCLOSURES:**
191 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
192 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
193 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
194 radon and radon testing may be obtained from your county health department.
195 (b) **PERMITS DISCLOSURE:** Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
196 does not know of any improvements made to the Property which were made without required permits or made
197 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
198 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
199 written documentation or other information in Seller's possession, knowledge, or control relating to
200 improvements to the Property which are the subject of such open permits or unpermitted improvements.
201 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
202 desires additional information regarding mold, Buyer should contact an appropriate professional.
203 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
204 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
205 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
206 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
207 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
208 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
209 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
210* may terminate this Contract by delivering written notice to Seller within _____ (if left blank, then 20) days after
211 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
212 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
213 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
214 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
215 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
216 rating.
217 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
218 required by Section 553.996, F.S.

Buyer's Initials **FP**   **MP**              Page **4** of **12**                Seller's Initials  **RM** 01/28/21
4:42 PM EST
dotloop verified

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 003300-700161-1794641


Form
Simplicity

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a15d40e99fd ]

(f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is mandatory.

(g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**

(h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

(i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status, under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to FIRPTA.

(j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are not readily observable and which have not been disclosed to Buyer. Except as provided for in the preceding sentence, Seller extends and intends no warranty and makes no representation of any type, either express or implied, as to the physical condition or history of the Property. Except as otherwise disclosed in writing Seller has received no written or verbal notice from any governmental entity or agency as to a currently uncorrected building, environmental or safety code violation.

**PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

**11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, Seller shall maintain the Property, including, but not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("AS IS Maintenance Requirement").

**12. PROPERTY INSPECTION; RIGHT TO CANCEL:**

(a) *PROPERTY INSPECTIONS AND RIGHT TO CANCEL: Buyer shall have __10__ (if left blank, then 15) days after Effective Date ("Inspection Period") within which to have such inspections of the Property performed as Buyer shall desire during the Inspection Period. If Buyer determines, in Buyer's sole discretion, that the Property is not acceptable to Buyer, Buyer may terminate this Contract by delivering written notice of such election to Seller prior to expiration of Inspection Period. If Buyer timely terminates this Contract, the Deposit paid shall be returned to Buyer, thereupon, Buyer and Seller shall be released of all further obligations under this Contract; however, Buyer shall be responsible for prompt payment for such inspections, for repair of damage to, and restoration of, the Property resulting from such inspections, and shall provide Seller with paid receipts for all work done on the Property (the preceding provision shall survive termination of this Contract). Unless Buyer exercises the right to terminate granted herein, Buyer accepts the physical condition of the Property and any violation of governmental, building, environmental, and safety codes, restrictions, or requirements, but subject to Seller's continuing AS IS Maintenance Requirement, and Buyer shall be responsible for any and all repairs and improvements required by Buyer's lender.*

(b) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the AS IS Maintenance Requirement and has met all other contractual obligations.

(c) **SELLER ASSISTANCE AND COOPERATION IN CLOSE-OUT OF BUILDING PERMITS:** If Buyer's inspection of the Property identifies open or needed building permits, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open or needed Permits, and shall promptly cooperate in good faith with Buyer's efforts to obtain estimates of repairs or other work necessary to resolve such Permit issues. Seller's obligation to cooperate shall include Seller's execution of necessary authorizations,



274 consents, or other documents necessary for Buyer to conduct inspections and have estimates of such repairs
275 or work prepared, but in fulfilling such obligation, Seller shall not be required to expend, or become obligated to
276 expend, any money.
277 (d) **ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** At Buyer's option and
278 cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties
279 to Buyer.

280 ### ESCROW AGENT AND BROKER

281 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
282 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
283 within the State of Florida, and subject to **COLLECTION**, disburse them in accordance with terms and conditions
284 of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
285 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may
286 take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or
287 liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until
288 the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine
289 the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the
290 dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon
291 notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the
292 extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will
293 comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through
294 mediation, arbitration, interpleader or an escrow disbursement order.
295 In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
296 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
297 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent
298 shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to
299 Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or
300 termination of this Contract.
301 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
302 square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate
303 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
304 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
305 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
306 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
307 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
308 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
309 **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
310 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
311 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at
312 all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with
313 or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
314 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
315 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
316 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
317 recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services
318 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor.
319 Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and
320 paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve
321 Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker
322 will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

323 ### DEFAULT AND DISPUTE RESOLUTION

324 **15. DEFAULT:**
325 (a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
326 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit
327 for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and
328 in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under

Buyer's Initials **FP**   **MP**                 Page **6** of 12                 Seller's Initials ___

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 003300-700161-1794641

Form
Simplicity

329  this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's
330  rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall
331  be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share
332  shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

333  (b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
334  reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
335  Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
336  from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
337  performance.

338  This Paragraph 15 shall survive Closing or termination of this Contract.

339  **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
340  Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled
341  as follows:

342  (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
343  resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph
344  16(b).

345  (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
346  Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
347  The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
348  sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
349  may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph
350  16 shall survive Closing or termination of this Contract.

351  **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
352  by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
353  conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover
354  from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
355  litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

356  **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

357  **18. STANDARDS:**

358  **A. TITLE:**

359  (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
360  Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
361  be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
362  or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
363  in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
364  subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
365  prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
366  Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
367  entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
368  10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
369  subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach
370  addendum); provided, that, none prevent use of Property for **RESIDENTIAL PURPOSES.** If there exists at Closing
371  any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall
372  be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance
373  with law.

374  (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
375  in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
376  delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
377  receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
378  receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
379  shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
380  written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
381  Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
382  Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,

Buyer's Initials **FP**    **MP**    Page 7 of 12    Seller's Initials    *RM*    01/29/21
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.    4:42 PM EST    dotloop verified

Serial#: 003300-700161-1794641

Form
Simplicity

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a16d40e99fd ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

383    deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
384    Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
385    (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
386    passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
387    electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
388    further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and
389    Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
390    thereby releasing Buyer and Seller from all further obligations under this Contract.
391    **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
392    encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
393    governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
394    such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
395    than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
396    Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
397    prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
398    preparation of such prior survey, to the extent the affirmations therein are true and correct.
399    **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
400    the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
401    **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
402    tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
403    deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s)
404    the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit
405    and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
406    Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
407    6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
408    within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this
409    Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
410    this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
411    thereunder.
412    **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
413    statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
414    repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
415    improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
416    general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
417    names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
418    for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
419    paid or will be paid at Closing.
420    **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
421    than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
422    specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
423    on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
424    is located) of the next business day.
425    **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
426    liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
427    services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
428    Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
429    unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
430    effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
431    Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
432    performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
433    this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
434    written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
435    further obligations under this Contract.
436    **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
437    personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
438    described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be

Buyer's Initials *FP*   *MP*     Page **8** of **12**     Seller's Initials 01/29/21   4:42 PM EST

FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.    dotloop verified

Form Simplicity

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a16d40e99fd ]

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

439 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
440 Contract.

441 **I.   CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
442 (i)   **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
443 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
444 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
445 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
446 means.
447 (ii)  ~~CLOSING DOCUMENTS: Seller shall at or prior to Closing, execute and deliver, as applicable, deed, bill of~~
448 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
449 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
450 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
451 the survey, flood elevation certification, and documents required by Buyer's lender.
452 (iii) **FinCEN GTO NOTICE.  If Closing Agent is required to comply with the U.S. Treasury Department's**
453 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
454 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
455 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
456 **report of said information to IRS.**
457 (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
458 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
459 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
460 **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.

461 **J.   ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
462 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
463 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
464 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
465 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from
466 date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
467 Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
468 simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
469 convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
470 for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
471 except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

472 **K.   PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
473 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
474 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
475 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
476 in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
477 by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
478 to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
479 current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
480 is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
481 assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
482 on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
483 of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
484 agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
485 informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
486 maximum allowable discounts and applicable homestead and other exemptions.  A tax proration based on an
487 estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
488 shall survive Closing.

489 **L.   ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
490 shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
491 including a walk-through (or follow-up walk-through if necessary) prior to Closing.

492 **M.   RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
493 ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
494 exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
495 pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated

Buyer's Initials **FP**      **MP**                              Page **9** of **12**                    Seller's Initials _RM_
_01/29/21_
FloridaRealtors/FloridaBar-ASIS-5x    Rev.6/19 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.    _4:42 PM EST_
_dotloop verified_

Serial#: 003300-700181-1794641

Form
Simplicity

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a16d40e99f4 ]

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

496  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
497  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
498  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
499  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
500  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
501  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

502  **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
503  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
504  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
505  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
506  upon, nor extended or delayed by, such Exchange.

507  **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
508  **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
509  be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
510  the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
511  the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
512  if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
513  (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
514  shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
515  as determined by Florida's Electronic Signature Act and other applicable laws.

516  **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
517  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
518  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
519  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
520  to be bound by it.

521  **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
522  Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
523  rights.

524  **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
525  or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

526  **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
527  **received, including Deposits, have become actually and finally collected and deposited in the account of**
528  **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
529  **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
530  **T. RESERVED.**

531  **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
532  of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
533  county where the Real Property is located.

534  **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
535  Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
536  of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
537  (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
538  from the IRS authorizing a reduced amount of withholding.

539  (i)  No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
540  provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
541  stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
542  home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
543  shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
544  to the IRS.

545  (ii)  If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
546  or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
547  reduced sum required, if any, and timely remit said funds to the IRS.

548  (iii)  If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
549  provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
550  received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
551  on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
552  escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the

Buyer's Initials **FP**     **MP**                                    Page **10** of **12**                    Seller's Initials [**RM**] _____

FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.   dotloop verified

Form Simplicity

dotloop signature verification: dotloop.com/my/verification

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

553   parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
554   directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
555   (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
556   transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
557   applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
558   disbursement in accordance with the final determination of the IRS, as applicable.
559   (v)  Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
560   8288 and 8288-A, as filed.
561*  **W. RESERVED**
562   **X. BUYER WAIVER OF CLAIMS:** *To the extent permitted by law, Buyer waives any claims against Seller*
563   *and against any real estate licensee involved in the negotiation of this Contract for any damage or defects*
564   *pertaining to the physical condition of the Property that may exist at Closing of this Contract and be*
565   *subsequently discovered by the Buyer or anyone claiming by, through, under or against the Buyer. This*
566   *provision does not relieve Seller's obligation to comply with Paragraph 10(j). This Standard X shall survive*
567   *Closing.*

### ADDENDA AND ADDITIONAL TERMS

569*  **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
570   Contract (**Check if applicable**):

|  | | |
|---|---|---|
| ☐ A. Condominium Rider | ☐ K. RESERVED | ☐ T. Pre-Closing Occupancy |
| ☐ B. Homeowners' Assn. | ☐ L. RESERVED | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing |     Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☒ P. Lead Paint Disclosure (Pre-1978) | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners/Flood Ins. | ☐ Q. Housing for Older Persons | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ CC. Miami-Dade County |
| | |     Special Taxing District |
| | |     Disclosure |
| | | ☒ Other: Seller's property |
| | |     disclosure |

571*  **20. ADDITIONAL TERMS:**

572   1) The sale of this property is contingent upon Seller receiving court approval from the Probate Court and
573   Bankruptcy Court

574
575   2) Seller may stay living (rent free) in the guest house in the back for up to 3 months from the closing date.

576   3) $600.00 of Buyer's escrow deposit will be immediately released to Seller. This $600 will be applied as a
577   credit to Buyer at closing. This $600.00 is non-refundable and will not be returned to Buyer in the event
578   that this transaction does not close for any reason other than Seller breaching the contract.

### COUNTER-OFFER/REJECTION

589*  ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
590   deliver a copy of the acceptance to Seller).
591*  ☐ Seller rejects Buyer's offer.

Buyer's Initials **FP**   **MP**    Page 11 of 12    Seller's Initials ____
FloridaRealtors/FloridaBar-ASIS-5x   Rev.6/19 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

Serial#: 003300-700161-1794641

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a16d40e99fd ]

592   **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
593   **ADVICE OF AN ATTORNEY PRIOR TO SIGNING.**

594   **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

595   *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the*
596   *terms and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and*
597   *conditions should be negotiated based upon the respective interests, objectives and bargaining positions of all*
598   *interested persons.*

599   AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK
600   TO BE COMPLETED.

601*   Buyer: *Fernando Patterson*                                             Date: 1/27/2021

602*   Buyer: *Marcelo Patterson*                                             Date: 1/27/2021

603*   Seller: *Raul Milian*                                             Date: _____

604*   Seller: _____                          Date: _____

605   Buyer's address for purposes of notice                  Seller's address for purposes of notice
606*   _____                          _____
607*   _____                          _____
608*   _____                          _____

609   **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers
610   entitled to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct
611   Closing Agent to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
612   agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
613   retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
614   made by Seller or Listing Broker to Cooperating Brokers.

615*             Mariela  Patterson P.A                                     Yalian  Serrano
616   **Cooperating Sales Associate, if any**                   **Listing Sales Associate**

617*             Royal Realtors Group 2.5%                        Keller Williams Realty Premier Properties
618   **Cooperating Broker, if any**                            **Listing Broker**

Serial#: 003300-700161-1794641

Form
Simplicity

Electronically Signed using eSignOnline™ [ Session ID : b53b4552-81bc-4164-8482-8a16d40e99fd ]

# Closing Disclosure

## Closing Information

| | |
|---|---|
| **Date Issued** | |
| **Closing Date** | 03/15/2021 |
| **Disbursement Date** | 03/15/2021 |
| **Settlement Agent** | Sharp Title Solutions of Florida, Inc. |
| **File #** | 2021-33 |
| **Property** | 430 Southwest 78th Avenue Miami, FL 33144 |
| **Sale Price** | $375,000.00 |

## Transaction Information

| | |
|---|---|
| **Borrower** | FERNANDO MIGUEL PATTERSON and MARCELO PATTERSON 4411 Rockwood Drive Raleigh, NC 27612 |
| **Seller** | RAUL MILIAN of RAUL MILIAN AND VICTOR DE JESUS EST OF |
| **Lender** | Cardinal Financial Company, Limited Partnership |

## Summaries of Transactions

### SELLER'S TRANSACTION

| | |
|---|---|
| 01 Sale Price of Property | $375,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | |
| 03 | |
| 04 | |
| 05 | |
| 06 | |
| 07 | |
| 08 | |
| **Adjustments for Items Paid by Seller in Advance** | |
| 09 City/Town Taxes | |
| 10 County Taxes | |
| 11 Assessments | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |

| | |
|---|---|
| 01 Excess Deposit | $525.00 |
| 02 Closing Costs Paid at Closing (J) | $42,637.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 Payoff of First Mortgage Loan | |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14 City/Town Taxes | |
| 15 County Taxes | |
| 16 Assessments | |
| 17 | |
| 18 | |
| 19 | |

| | |
|---|---|
| Total Due to Seller at Closing (M) | $375,000.00 |
| Total Due from Seller at Closing (N) | -$43,162.00 |
| Cash to Close ☐ From ☒ To Seller | $331,838.00 |

## Contact Information

| Name | Royal Realtors Group |
|---|---|
| Address | 9261 Sunset Drive Miami, FL 33173 |
| ST License ID | |
| Contact | Mariela Patterson |
| Contact ST License ID | 3296452 |
| Email | marpatter@gmail.com |
| Phone | (305) 428-3778 |

| Name | Keller Williams Realty Premier |
|---|---|
| Address | 11420 North Kendall Drive Suite 207 Miami, FL 33176 |
| ST License ID | CQ1017617 |
| Contact | YALIAN SERRANO |
| Contact ST License ID | 3252409 |
| Email | YALIAN@YSERRANO.COM |
| Phone | (305) 213-4680 |

| Name | Sharp Title Solutions of Florida, Inc. |
|---|---|
| Address | 10691 North Kendall Drive 309 Miami, FL 33176 |
| ST License ID | P239678 |
| Contact | J Rodriguez |
| Contact ST License ID | P229573 |
| Email | jennifer@sharptitlesolutions.com |
| Phone | (305) 596-0301 |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

Exhibit "B"

# Closing Cost Details

| LOAN COSTS | | |
|---|---|---|
| 01 0% of Loan Amount (Points) | | |
| | | |
| 01 | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| | | |
| 01 E-recording Fee to Simplifile | $18.00 | |
| 02 Lien Search to CMR | $150.00 | |
| 03 Settlement Fee to Sharp Title Solutions of Florida, Inc. | $595.00 | |
| 04 Title Exam Fee to Old Republic National Title Insurance Company | $125.00 | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| 09 | | |
| 10 | | |

| OTHER COSTS | | |
|---|---|---|
| | | |
| 01 Recording Fees Deed: $18.50  Mortgage: $171.50 | | |
| 02 Documentary Stamp Tax (State Deed Taxes) to Official Records Department | $2,250.00 | |
| 03 | | |
| 04 | | |
| | | |
| 01 Homeowner's Insurance Premium | | |
| 02 Mortgage Insurance Premium | | |
| 03 Prepaid Interest | | |
| 04 Property Taxes | | |
| 05 | | |
| | | |
| 01 Homeowner's insurance | | |
| 02 Mortgage insurance | | |
| 03 Property taxes | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| | | |
| 01 Selling Agent Commission to Royal Realtors Group | $9,375.00 | |
| 02 Listing Agent Commission to Keller Williams Realty Premier | $9,375.00 | |
| 03 Courier Fee to TBD | $30.00 | |
| 04 to Paul J. Sardon, P.A. | $750.00 | |
| 05 2020 Property Taxes to Miami-Dade County Tax Collector | $3,826.75 | |
| 06 2019 Property Taxes to Miami-Dade County Tax Collector | $3,340.85 | |
| 07 2015-2017 Property Taxes to Miami-Dade County Tax Collector | $12,801.40 | |
| 08 | | |
| 09 | | |
| 10 | | |
| | | |
| | $42,637.00 | |

Confirm Receipt

RAUL MILIAN AND VICTOR DE JESUS EST OF

By:_____

RAUL MILIAN                                                                                     Date

Label Matrix for local noticing
113C-1
Case 18-17860-RAM
Southern District of Florida
Miami
Tue Mar  2 15:09:12 EST 2021

CarFinance Capital
c/o Gerard Kouri, Jr. P.A.
5311 King Arthur Avenue
Davie, FL 33331-3340

Miami Dade County Tax Collector (windley)
200 NW 2nd Avenue, Suite 430
Miami, FL 33128-1733

Synchrony Bank
PRA Receivables Management, LLC
c/o Valerie Smith
PO Box 41021
Norfolk, VA 23541-1021

Alliance One
6565 Kimball Dr
Flemington, MO 65650

Baptist Health South Florida
PO Box 198116
Atlanta, GA 30384-8116

CARFINANCE CAPITAL
PO BOX 3807
COPPELL, TX 75019-5877

CAZ Creek Florida II LLC, MTAG as
Custodian For CAZ Creek Florida II, LLC
PO Box 54900
New Orleans LA 70154-4900

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Checksystems
7805 Hudson Rd
Saint Paul, MN 55125-1703

Child Support Enforcement
PO Box 8030
Tallahassee, FL 32314-8030

Credit Management, LP
4200 International Pkwy
Carrollton, TX 75007-1912

Credit Management, LP
Attn: Bankruptcy
Po Box 118288
Carrollton, TX 75011-8288

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

ECMC
PO Box 16408
St. Paul, MN 55116-0408

Equifax
Po Box 740241
Atlanta, GA 30374-0241

Experian
Po Box 2002
Allen, TX 75013-2002

FMA Allaince, Ltd.
12339 Cutten Road
Houston, TX 77066-1807

Flagship Credit Acceptance
3 Christy Dr Ste 201
Chadds Ford, PA 19317-9670

Flagship Credit Acceptance
Po Box 965
Chadds Ford, PA 19317-0643

Florida Department Of Revenue
5050 W Tennessee St
Tallahassee, FL 32399-0100

GC Services Limited Partnership
Po Box 1545
Houston, TX 77251-1545

Galloway Anesthesia Assoc
Attn: Patient Collections
PO Box 13484
Belfast, ME 04915-4025

Gastro Health PL
Attn: Patient Collections
PO Box 848593
Boston, MA 02284-8593

IRS Centralized Bankruptcy Department
PO Box 7346
Philadelphia, PA 19101-7346

Jackson Health
Credit and Collection
200 NW 2nd Ave 3rd Floor
Miami, FL 33128-1735

Jackson Memorial Hospital
POB 864735
Orlando, FL 32886-4735

LVNV Funding, LLC its successors and assigns
assignee of Arrow Financial Services,
LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

LVNV Funding, LLC its successors and assigns
assignee of Springleaf Financial
Services Of Indiana, Inc.
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Lee Memorial Halth System
PO Box 530270
Atlanta, GA 30353-0270

MERRICK BANK
Resurgent Capital Services
PO Box 10368
Greenville, SC 29603-0368

Med Business Bureau
1460 Renaissance Dr
Park Ridge, IL 60068-1349

Med Business Bureau
1460 Renaissance Dr #400
Park Ridge, IL 60068-1349


Miami Dade County Tax Collector (Windley)
200 NW 2nd Avenue, Suite 430
Miami, Florida 33128-1733

Miami-Dade County Florida
200 NW 2nd Ave
Miami, FL 33128-1733

Miami-Dade Fire Rescue
PO Box 862205
Orlando, FL 32886-2205


Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Pathology Assoc of S Miami
Po Box 198523
Atlanta, GA 30384-8523

Pinnacle Credit Services, LLC its successors
assigns as assignee of Cellco
Partnership d/b/a Verizon Wireless
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587


Premier Bankcard, Llc
Jefferson Capital Systems LLC Assignee
Po Box 7999
Saint Cloud Mn 56302-7999

Quantum3 Group LLC as agent for
GPCC I LLC
PO Box 788
Kirkland, WA 98083-0788

Radiology Association of South Fl
2555 Ponce De Leon Blvd 4th Fl
Miami, FL 33134-6019


Receivables Management Group
2901 University Av
Columbus, GA 31907-7606

Receivables Management Group
Attn: Bankruptcy
2901 University Ave. Suite #29
Columbus, GA 31907-7601

Regions Bank
11865 SW Coral Way Door C
Miami, FL 33175-2400


SREGAL Lien Processing, LLC
701 West Main Street
PO Box 1665
Jefferson City MO 65102-1665

Santander Consumer USA
Po Box 961245
Ft Worth, TX 76161-0244

South Miami Cricare, Inc.
PO Box 919315
Orlando, FL 32891-0001


South Miami Criticare, Inc
Po Box 91935
Orlando, FL 32891-0001

South Miami Hospital
PO Box 919315
Orlando, FL 32891-9315

South Miami Hospital, Inc.
PO Box 198116
Atlanta, GA 30384-8116


Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk VA 23541-1021

TLGFY LLC, Capital One NA as
Collateral Assignee of TLGFY LLC
PO Box 54347
New Orleans LA 70154-4347

TLGFY, LLC
PO Box 54347
New Orleans, LA 70154-4347


Transunion
Po Box 1000
Chester, PA 19016-1000

Transword Systems, Inc.
PO Box 4903
Trenton, NJ 08650-4903

U.S. Department Of Education
PO BOX 105291
Atlanta, GA 30348-5291


West Kendall Baptist Hospital
Po Box 198116
Atlanta, GA 30384-8116

Nancy K. Neidich
www.ch13miami.com
POB 279806
Miramar, FL 33027-9806

Raul Milian
430 SW 78th Ave
Miami, FL 33144-2320

Timothy S Kingcade Esq
1370 Coral Way
Miami, FL 33145-2960

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Department of the Treasury
Po Box 21126
Philadelphia, PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami                          (d)IRS Centralized Bankruptcy Department        End of Label Matrix
                                  POB 7346                                        Mailable recipients      60
                                  Philadelphia, PA 19101-7346                     Bypassed recipients       2
                                                                                  Total                    62